IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOMMY LEE WILEY, III,**<br><br>                              Petitioner,<br><br>        v.<br><br>**DEBBIE ASUNCION, Warden,**<br><br>                              Respondent. | **Case No. 1:14-cv-00866 LJO MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent, Debbie Asuncion, Warden of California State Prison, Los Angeles County, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Mark A. Johnson of the office of the Attorney General.

**I.      PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following

his conviction by jury trial on March 11, 2011, for attempted murder, assault by means likely to produce great bodily injury, and various enhancements. (Clerk's Tr. at 291-94.) On June 3, 2011, Petitioner was sentenced to an indeterminate term of fourteen (14) years to life consecutive to a term of twenty-nine (29) years for the various enhancements. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which affirmed the judgment in part on March 6, 2013. (Lodged Docs. 1-4, People v. Wiley, 2013 Cal. App. Unpub. LEXIS 1667 (Mar. 6, 2013).) The appellate court struck an enhancement and ordered two clerical errors corrected, but otherwise affirmed the judgment. (Id.) Petitioner did not seek direct review from the California Supreme Court.

Petitioner sought collateral review of the conviction in state court in the form of several petitions for writs of habeas corpus. Petitioner filed four petitions for a writ of habeas corpus with the Tulare County Superior Court. (See Lodged Doc. 5, Tulare County Sup Ct. Case Nos. VHC252913, VHC256503, VHC280092, VHC283334.) All four petitions were denied. (Id.) On July 29, 2013, Petitioner filed a petition for writ of habeas corpus with the Fifth District Court of Appeal. (Lodged Doc. 6.) The petition was denied on September 10, 2013. (Id.) Petitioner then filed four petitions for writ of habeas corpus with the California Supreme Court. (Lodged Doc. 7.) All the petitions were denied. (Id.) Relevant to the instant federal petition is Petitioner's first petition for writ of habeas corpus filed with the California Supreme Court on October 23, 2013 containing the claim presented in this federal petition.[1] (Id.)

Petitioner filed the instant federal habeas petition on June 4, 2014. (Pet., ECF No. 1.) Petitioner presents a claim of ineffective assistance of counsel in the instant petition. Petitioner alleges: (1) that there was a speedy trial violation resulting from the

---

[1] A review of Petitioners' state petitions for writ of habeas corpus show that Petitioner had not previously presented the claim to the lower state courts in his prior habeas petitions.

ineffective assistance of counsel and (2) that counsel was ineffective for failing to investigate and object to evidence presented at trial. (Id.) Respondent filed an answer to the petition on October 13, 2014. (ECF No. 20.) Petitioner filed a traverse on October 24, 2014. (ECF No. 21.) The matter stands ready for adjudication.

## II.  **STATEMENT OF THE FACTS**

Petitioner Tommy Wiley knew the victim, 19-year-old Rafael Del Real, through Wiley's cousin, Ondre Tucker. (7 RT 296, 314; 8 RT 457.) Wiley had socialized with Del Real and Tucker on several prior occasions. (7 RT 297-298, 317.)

Around 3:30-4:00 p.m. on April 26, 2010, Wiley went to Del Real's house in Tulare. (7 RT 274, 289, 296, 320.) They sat in the garage talking and smoking marijuana. (7 RT 275, 289, 299.) Before 5:00 p.m. (7 RT 276, 284-285, 300), they went for a drive in Wiley's car (7 RT 300-301). Del Real's mother witnessed Wiley coming by the house and Del Real leaving in Wiley's car. (7 RT 274-75.) After stopping at a store in Pixley to buy "blunts" with which to make marijuana cigarettes, they drove to "the country" while talking and smoking. (7 RT 301-302, 322-324.)

After driving for 30-60 minutes, Wiley and Del Real got out of the car to urinate. (7 RT 301-303, 326-327.) Del Real heard the "click" of a gun (7 RT 303, 328) and looked up to see Wiley walking toward him and pointing a gun at him (7 RT 304-305, 331). Wiley said, "Come here, fool, come here." (7 RT 305, 330.) Wiley repeatedly pulled the trigger, but the gun misfired. (7 RT 305, 331.)

Del Real ran across the road into an olive orchard, with Wiley close behind him. (7 RT 306, 332-333.) When Del Real tripped and fell, the much larger Wiley got on his back. (7 RT 307-308, 336-337; 9 RT 523.) As they struggled, the gun went off next to Del Real's left ear, but the bullet missed him. (7 RT 308-309, 338.)

Wiley racked the gun four or five times, ejecting rounds. (7 RT 309- 311, 339-340.) Then Wiley held Del Real's head down and began beating him on the head with the butt of the gun. (7 RT 311-312, 340.) Del Real lost consciousness. (7 RT 312, 340-

341.) The attack was not preceded by an argument or any other dispute between them. (7 RT 313, 327.)

Sometime in the early evening, a passing motorist saw Del Real and called for help. (7 RT 231-232, 234.) Law enforcement and medics arrived at about 7:30-7:45 p.m. (7 RT 243, 249, 262.)

Del Real suffered skull fractures, had 142 staples put in his head, and required surgery to remove a piece of skull from his brain. He was hospitalized for a week. (7 RT 313.)

Upon investigating the scene of the crime, law enforcement found several live, unfired rounds at the scene along with significant amounts of blood. (8 RT 377-97.) Investigators also found blood spots on the outside of Wiley's car, inside the driver's door, on the seat belt, and on the steering wheel. (8 RT 396-97.) DNA tests revealed that the blood on the outside of the car, on the seat belt, and on the steering wheel belonged to Del Real. (8 RT 453-54.) The blood spots on the inside of the door contained a combination of Del Real and Wiley's blood. (Id.)

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. (Pet.) In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, this Court has jurisdiction over the instant action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7. Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-

71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (quoted by Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Id.

Richter instructs that whether the state court decision is reasoned and explained,

6

or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. (emphasis added). To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).

## IV. REVIEW OF PETITION

### A. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective based counsel's failure to bring Petitioner's case to trial in a speedy manner, and counsel's failure to investigate and object to inadmissible evidence. The Court will discuss each claim in turn.

### B. State Court Decision

The claims were denied in an unreasoned decision by the California Supreme Court (Lodged Doc. 7, California Supreme Court Case No. S214184.) Where the last state court decision did not address the merits of the petition, the court, under § 2254(d), must determine what arguments or theories could have supported, the state court's decision and determine whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

### C. Legal Standard

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this

> Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

**D.    Analysis**

   1. Speedy Trial

Petitioner asserts that counsel was ineffective for failing to pursue a speedy trial as requested by Petitioner. Petitioner contends that his trial was delayed nearly a year, despite his lack of consent to any continuations. (Pet. at 7-12.) During that time, Petitioner's competency to stand trial was in doubt and he was examined, and a competency trial was held on March 14, 2011.

Petitioner does not challenge his right to a speedy trial under the Sixth Amendment. See Vermont v. Brillon, 556 U.S. 81, 89 (2009). Even assuming that his right to a speedy trial was violated, Petitioner has not shown that counsel's conduct was deficient, or that he was prejudiced by the conduct. As Petitioner acknowledges in his petition, it appears that a significant reason for the delay involved concerns regarding

Petitioner's competency. Ensuring that his client was competent to stand trial was reasonable trial strategy, and in fact essentially mandatory since defense counsel has an ethical duty to his client and the Court to so ensure. If Petitioner was not competent to stand trial and his counsel nevertheless attempted to proceed to trial, trial results likely would have been vacated. Continuing trial to allow for expert testing of Petitioner and a resulting competency proceeding ensuring Petitioner was capable of standing trial was well within the scope of reasonable trial strategy. Petitioner has not shown that counsel's conduct was deficient.

Moreover, Petitioner has not shown that he was prejudiced by counsel's conduct. He has not presented any argument as to how the trial result would have been different had there been no delay. There is no reason to believe that the prosecution would have lacked any evidence presented at trial or that Petitioner would have had any new or additional defenses to present.

Petitioner has not met his burden of showing that but for counsel being ineffective, there was a "reasonable probability that... the result ... would have been different." Strickland, 466 U.S. at 694. The prosecution presented strong evidence of Petitioner's guilt based on victim's testimony, and the physical evidence, including blood linking Petitioner and his car to the attempted murder. To the extent that the state court could have based its decision on the lack of deficient performance or prejudice for the reasons stated above, it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786. Petitioner's first claim of ineffective assistance of counsel is without merit.

2. Failure to Object to Testimonial Out of Court Statements

Petitioner contends that counsel was ineffective for failing to object to the statements of the state's criminologist regarding the results of DNA testing as they violated Petitioner's Sixth Amendment right to confrontation of witnesses. At trial Detective Meek with the Tulare County Sherriff's office testified regarding the collection of physical evidence from the scene including obtaining blood samples from Petitioner's

car. (8 RT 370-415.) However, defense counsel stipulated to the presentation of the DNA report from Mindy Crow, a senior criminologist with the California Department of Justice, regarding the results of the DNA testing of the blood samples from Petitioner's car. (Pet. at 41-43.)

### a. Legal Standard

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him." The Confrontation Clause prohibits the admission of testimonial out-of-court statements by non-testifying individuals. Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). When the prosecution introduces a forensic report that constitutes a testimonial statement, the analyst who produced the report must personally testify. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); Bullcoming v. New Mexico, 131 S. Ct. 2705, 2710, 180 L. Ed. 2d 610 (2011). Confrontation Clause violations are subject to harmless error analysis under Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); United States v. Norwood, 603 F.3d 1063, 1067 (9th Cir. 2010).

### b. Analysis

Petitioner has not shown that counsel's conduct was deficient or that he was prejudiced by that conduct. Counsel stipulated to the results of the DNA report. Petitioner has presented no evidence that Mindy Crow was available to testify to the results her testing. Had Petitioner shown evidence that Crow was not available, counsel's conduct may have been deficient. However, it is just as possible that, counsel made a strategic decision to stipulate to Crow's testimony in order to minimize its impact. Testimony that the victim's DNA was found on various surfaces of Petitioner's car was particularly harmful evidence against Petitioner. If defense counsel had no way of rebutting or challenging the evidence, attempting to lessen the time it took to present such evidence to the jury was a reasonable strategy.

Even assuming a Crawford error occurred, Petitioner has failed to show that he was prejudiced by it. Even without the DNA evidence, there was ample evidence, especially eye-witness testimony from the victim, that Petitioner committed the offenses. Other eye-witnesses placed Petitioner as the last person to be seen with the victim, and the victim testified regarding the facts of the attempted shooting and physical beating he suffered at the hands of Petitioner. Petitioner has not met his burden of showing that but for counsel being ineffective, there was a "reasonable probability that... the result ... would have been different." Strickland, 466 U.S. at 694. Even if counsel could have prevented the DNA evidence from being admitted, Petitioner likely would have been convicted based on the other evidence presented.

The prosecution presented strong evidence of Petitioner's guilt based on victim's testimony, and the physical evidence (excluding the results of the DNA testing). To the extent that the state court could have based its decision on the lack of deficient performance or prejudice for the reasons stated above, it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786. Petitioner's second claim of ineffective assistance of counsel is without merit.

## IV. **RECOMMENDATION**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time

may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: May 20, 2016                     /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE